**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO: _____

BLUE CROSS BLUE SHIELD
HEALTHCARE PLAN OF GEORGIA, INC.

    Petitioner,                                    Related Case No.:
                                                         1:23-cv-03748-JPB
    v.                                         (NORTHERN DISTRICT OF GEORGIA)

GELBER SCHACHTER & GREENBERG, P.A.

    Respondent.

_____/

**MOTION TO COMPEL GELBER SCHACHTER & GREENBERG, P.A. TO PRODUCE DOCUMENTS PURSUANT TO SUBPOENAS AND INCORPORATED MEMORANDUM OF LAW**

Petitioner Blue Cross Blue Shield Healthcare Plan of Georgia, Inc. ("BCBSGA"), pursuant to Rule 45 of the Federal Rules of Civil Procedure, moves to compel Respondent Gelber Schachter & Greenberg, P.A. ("GSG"), a professional association located in Miami-Dade County, to produce responsive documents pursuant to valid subpoenas issued by BCBSGA on February 11, 2025, and March 25, 2025, (the "Subpoenas") in connection with a litigation titled *LifeBrite Labs., LLC et al. v. Blue Cross & Blue Shield of Fla., Inc., et al.*, pending in the United States District Court, Northern District of Georgia, bearing Civil Action No. 1:23-cv-03748 (the "Georgia Litigation").

**INTRODUCTION**

Christian Fletcher and the clinical laboratory he owned, LifeBrite Laboratories, LLC, initiated the Georgia Litigation after Fletcher was acquitted in a federal healthcare fraud case prosecuted by the Department of Justice ("DOJ"), in which the DOJ had pursued criminal charges based on Fletcher's (and his conspirators'/co-defendants') allegedly fraudulent pass-through

1

laboratory billing. In the Georgia Litigation, Fletcher and LifeBrite (as Plaintiffs) allege that certain insurers—BCBSGA, Blue Cross Blue Shield of Florida, Inc., UnitedHealth Group Inc., Aetna Health Inc. (Georgia), and Aetna Health Inc. (Florida) (collectively, the "Insurers")—conspired to dupe the DOJ into charging and trying Fletcher even though there was not probable cause for the charges. The DOJ has repeatedly rejected this contention, calling Plaintiffs' theory "frivolous." A similar lawsuit was filed by one of Fletcher's criminal co-defendants, Aaron Durall. The Durall matter is pending in this District before Judge Singhal. *See Durall, et al. v. Blue Cross & Blue Shield of Fla., Inc., et al.*, Case No. 23-cv-61557.

A central issue in the Georgia Litigation is what the Government's basis was for prosecuting Fletcher. GSG had multiple conversations with the Government about that topic on behalf of their client, Durall. As a result, in November 2024, Fletcher's counsel in the Georgia Litigation contacted GSG and requested a deposition "to secure testimony about what the government told [GSG]" in a meeting GSG had with the Government. Plaintiffs' counsel explained: "We understand [you] took notes of that meeting [with the Government]. The deposition would be short and just secure admissible testimony based on those notes." *See* Exhibit A. Fletcher then noticed the deposition of Daniel Gelber, a partner at GSG. In response, BCBSGA served a subpoena duces tecum on GSG requesting, among other things, GSG's "non-privileged Documents related to" the criminal matter and communications with Fletcher or his counsel in the Georgia Litigation. *See* Exhibit B.

GSG made a production in response to BCBSGA's subpoena on February 27, 2025. Then, days before the deposition of Gelber, GSG produced a "memorandum" from GSG to their client, Durall, providing GSG's self-described ▮▮▮▮▮▮▮▮▮▮ about a meeting with the Government that happened on November 23, 2019 (the "GSG Memo"). See Exhibit C. This

document was not requested by the original subpoena, which sought non-privileged documents. *See* Exhibit B. It was voluntarily produced by Durall, presumably because both Fletcher and Durall want to use it in their cases against the Insurers.

The GSG Memo is labeled as "Privileged and Confidential," "Attorney Work Product," and GSG asserted therein that it was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Exhibit C. The GSG Memo states that it ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *Id*. In a letter, GSG wrote that it was producing the document with Durall's consent and that, "[t]ypically, these would be considered attorney work product, but we are producing them with slight redactions." *See* Exhibit D. In his deposition, Gelber confirmed that the GSG Memo was originally withheld because it was attorney work product, but that Durall later consented to its production. *See* Exhibit E at 77:13-17; 82:7-86:16. At the conclusion of the deposition, during which Gelber was pressed as to why the production of the GSG Memo did not also constitute waiver of the attorney-client privilege, Durall—an attorney—stated on the record, "In regard to the attorney-client privilege, I do not waive that privilege. The document that was produced, it was work product privilege and, therefore, I still maintain my attorney-client privilege with GSG." *See* Exhibit E at 128:11-17. Thus, at a minimum, Durall knowingly and intentionally waived the attorney work product privilege.

Durall and Fletcher have aligned interests in their lawsuits against the Insurers. They are apparently coordinating in the voluntary production of privileged documents where it suits them, but refusing to produce other similar documents, presumably because they are unfavorable to them. For example, Durall's other criminal defense counsel, is withholding a "[s]ummary of notes from

May 29, 2019 call with" one of the prosecutors. *See* Exhibit F.[1] GSG is also withholding other documents apparently reflecting what the Government told GSG about the potential charges. GSG's privilege log contains documents discussing, for example, the "3 ways govt looking at case," and other correspondence apparently reflecting its communications with the Government or about the GSG Memo itself. *See* Exhibit G.

The production of the GSG Memo is a clear waiver of the attorney-client privilege and attorney work product privilege. Thus, BCBSGA respectfully requests the Court compel GSG's full compliance with the Subpoenas issued to it by BCBSGA, including finding that Durall has waived attorney work product and the attorney-client privilege with respect to any documents reflecting or relating to his counsel's communications with the Government.

## BACKGROUND

**The Criminal Matter**:

In June 2020, a grand jury in the Middle District of Florida indicted Fletcher, Durall, and others for using "financially distressed" hospitals to "bill[ ]false and fraudulent claims for laboratory testing under the hospitals' in-network contracts, even though such testing took place at independent laboratories on behalf of patients with no connection to the hospitals." *See United States v. Perez, et al.*, 3:20-cr-0086 (M.D. Fla.) (the "Criminal Matter"), D.E. 1. Durall and Fletcher each owned laboratories accused of engaging in this scheme. *See id*. A jury convicted Jorge and Ricardo Perez—whose company handled billing for Fletcher's laboratory—of conspiracy to commit health care fraud. *See id.* at D.E. 768. Five other alleged co-defendants pleaded guilty to various crimes. *See id.* at D.E. 575, 904, & 905; *United States v. Marcotte*, 3:19-

---

[1] The attorney who apparently took those notes now represents both Fletcher and Durall in their lawsuits against the Insurers.

cr-00113 (M.D. Fla.) at D.E. 10; *United States v. Byrns*, 3:19-cr-00166 at D.E. 12. After a hung jury in their first criminal trial, Fletcher and Durall were acquitted in a second trial. *See Perez*, 3:20-cr-0086 (M.D. Fla) at D.E. 1005, 1006.

**The Georgia Litigation**:

Fletcher and Durall both filed suit against certain health insurers, claiming the health insurers caused them to be maliciously prosecuted. *See LifeBrite Labs., LLC et al. v. Blue Cross & Blue Shield of Fla., Inc. et al.*, No. 1:23-cv-03748-JFB (N.D. Ga.); *Durall, et al. v. Blue Cross & Blue Shield of Fla., Inc., et al.*, No. 23-61557-CIV-SINGHAL. The remaining claims in the Georgia Litigation are for malicious prosecution and alleged violation of Georgia's RICO statute. *See* D.E. 64.

**Durall Produces the GSG Memo and Waives Attorney Work Product and Privilege**:

In the Criminal Case, Durall was represented by both GSG (for a time) and others, including Brian Rafferty. During the Criminal Case, Rafferty moved from Polsinelli P.C. to Baker Hostetler LLP and then to his own firm. Rafferty now represents *both* Fletcher and Durall in their lawsuits against the Insurers. *See* Exhibit H.

Durall and Fletcher have coordinated on numerous aspects of discovery in the Georgia Litigation, despite the fact that Durall is not a party to that action. In November 2024, Fletcher's counsel contacted Durall's criminal counsel at GSG, asking for a short deposition "to secure testimony about what the government told [GSG]" in a meeting GSG had prior to Durall and Fletcher's indictment. *See* Exhibit A. Fletcher's counsel explained: "We understand [you] took notes of that meeting [with the Government]. The deposition would be short and just secure admissible testimony based on those notes." *See id.*

On January 28, 2025, Fletcher noticed the deposition of Gelber, a partner at GSG. In response, BCBSGA served a subpoena on GSG to obtain, among other things, all *non-privileged* documents in GSG's possession that relate to the Government's investigation or the criminal case. *See* Exhibit B. GSG produced 33 pages of documents and a privilege log listing two documents on February 27, 2025. *See* Exhibit I.

On March 3, 2025, without prompting from BCBSGA, GSG made a supplemental production of a single document. The document is a memorandum from GSG to its client, Durall, copying Rafferty, and summarizing a meeting with the Government:



The GSG Memo was not even responsive to BCBSGA's subpoena, which was limited to non-privileged documents to try to avoid imposing an undue burden on GSG. *See* Exhibit B; *see also* Exhibit E at 74:12–15 ("Well, you had asked for nonprivileged documents and attorney work product is arguably something you don't need to produce in response to that."). Thus, it was

voluntarily produced by GSG with Durall's consent. In fact, the production of the GSG Memo followed a conversation between GSG and Fletcher's counsel about the upcoming deposition, including about the substance of Gelber's testimony. Exhibit A, *see also* Exhibit E at 41–43.

The GSG Memo is labeled as "Privileged and Confidential," "Attorney Work Product," and GSG asserted therein that it was ███████████████████████████████████ " *See* Exhibit C. The GSG Memo itself states that it " ███████████████████████████████████

███████████████████████████ " *Id*. Moreover, in their cover letter enclosing the document, GSG wrote that they were producing the GSG Memo with Durall's consent and that, "[t]ypically, these would be considered attorney work product, but we are producing them with slight redactions." Exhibit D. In his deposition, Gelber confirmed repeatedly that the GSG Memo was attorney work product. *See, e.g.*, Exhibit E at 73:15–17 ("And it just seemed like it was useful and we hadn't produced it because it is attorney work product."); 84:4–6 ("I told [Durall] it was work product and that – and that we thought it would be best to produce it and he said fine."); 84:11–12 ("I told [Durall] it was work product. My view is as produced to you, it's work product."); 86:15–16 ("It was not produced originally because it was attorney work product.").

In the deposition of Gelber, Fletcher's counsel attempted to lay foundation for the admissibility of the GSG Memo. *See* Exhibit E at 12-17. Gelber confirmed under oath that GSG used memoranda such as the GSG Memo to "talk to the client later about the case" and because "the client will want to know what happened and so we want to give them an accurate recital." Exhibit E at 13–14. Gelber believed the GSG Memo was sent to Durall. *Id*. at 17:3–13.

At the conclusion of the deposition, Durall—an attorney—stated on the record that, "In regard to the attorney-client privilege, I do not waive that privilege. The document that was

produced, it was work product privilege and, therefore, I still maintain my attorney-client privilege with [GSG]." Exhibit E at 128:11–17.

**BCBSGA Issues a Second Subpoena to GSG**:

Following the production of the GSG Memo, BCBSGA issued GSG a second subpoena dated March 25, 2025, seeking all documents reflecting communications with the Government about its theory of the case. *See* Exhibit J. Aside from the one cherry-picked memorandum, however, GSG has not agreed to produce its other documents relating to its communications with the Government. *See* Exhibit K (GSG's Response to BCBSGA's March 25, 2025, Subpoena); Exhibit G (GSG's most recent privilege log).

**GSG and Durall's Other Criminal Counsel Are Withholding Similar Documents**:

GSG is withholding other documents that likely reflect or contain what the Government told Durall's counsel about their case. GSG's log does not describe how any documents are privileged and withholds certain categories of documents in bulk (*e.g.*, "Case Documents"). *See* Exhibit G. However, the documents that are logged include dozens of documents with subject lines that appear to relate to their communications with the Government, including apparent summaries of what the Government told them, including "Durall – government call.msg"; "For Jim Hayes meeting tomorrow"[2]; "RE: 3 ways govt looking at case;" and "RE: Aaron Durall – Memo re Meeting with Government"; and "Re: Government Case." *See id.* Moreover, Mr. Gelber testified that GSG engaged in at least one other meeting and several phone calls with the Government concerning the basis for a potential prosecution. *See* Exhibit E at 45:4–22; 63:13–19; 64:19–65:1; 71:25–72:6. If his testimony is to be credited, GSG would have kept notes of what was said.

---

[2]   Jim Hayes was one of the federal prosecutors investigating Fletcher and Durall.

Durall's other criminal counsel recorded at least one similar summary of a meeting with the Government that Durall has thus far refused to produce. Specifically, Polsinelli PC produced a privilege log identifying a "[s]ummary of notes from May 29, 2019 call with Tysen Duva," written by Brian Rafferty. *See* Exhibit F. The only basis asserted for withholding the notes is attorney work product. *See id*. Moreover, the GSG Memo notes that the Government told GSG that it had already "█████████████████████" about the Government's case, so it remains to be seen how many other notes or memoranda exist reflecting Durrall's counsel's conversations with the Government about the potential charges against Durrall. *See* Exhibit C.

## **LEGAL STANDARD**

Rule 45 provides that a party may subpoena documents, ESI, or tangible things in a non-party's possession. *Peninsula Petroleum Ltd. v. CI Int'l Fuels LLC*, No. 22-CV-20712, 2023 WL 8476409, at *1 (S.D. Fla. Sept. 12, 2023); *Ross v. Livingston*, No. 5:11-CV-474 CAR, 2012 WL 4862827, at *1 (M.D. Ga. Oct. 12, 2012). "[T]he scope of discovery [under Rule 45] is the same as the scope of discovery under Rule 26(b) and Rule 34." *Anthony v. FDE Mktg. Grp. LLC*, No. 21-23345-MC, 2021 WL 5937683, at *1 (S.D. Fla. Dec. 16, 2021) (quotation and citation omitted); *see also Ross*, 2012 WL 4862827, at *1. "[P]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." *Feingold v. Cardinale*, No. 22-CV-20375, 2023 WL 8476408, at *3 (S.D. Fla. Nov. 1, 2023) (citing Fed. R. Civ. P. 26(b)(1)); *see also Ross*, 2012 WL 4862827, at *1. "The party seeking to quash the subpoena bears the burden to establish that the information sought is protectable under Rule 45, but the party issuing the subpoena bears the burden of proving the requests are relevant." *Mad Room, LLC v. City of Miami*, No. 21-23485-CV, 2022 WL 19331243, at *4 (S.D. Fla. Dec. 9, 2022); *see also Sams v. GA W. Gate, LLC*, 316 F.R.D. 693, 698 (N.D. Ga.

2016) (requiring the party opposing the discovery to first demonstrate that the requested disclosure might be harmful before the burden shifts to the requesting party to show a substantial need for the testimony or material).

Federal Rule of Civil Procedure 45(d) requires that a party seeking to enforce a subpoena must file "its motion to compel in the district where compliance is required. . . ." *CITGO Petroleum Corp. v. Petroleum Logistics Serv. USA, Inc.*, No. 22-MC-20762, 2022 WL 2341226, at *3 (S.D. Fla. Apr. 12, 2022) (citing Fed. R. Civ. P. 45(d)(2)(B)(i)).

## ARGUMENT

### I.      Durall voluntarily produced the GSG Memo, waiving attorney work product.

Durall allowed GSG to voluntarily produce the GSG Memo even though it was not responsive to BCBSGA's original subpoena (which only sought non-privileged documents) and stated on the record during Mr. Gelber's deposition that it was attorney work product. *See* Gelber Dep. 128 ("In regard to the attorney-client privilege, I do not waive that privileged. The document that was produced, it was work product privilege and, therefore, I still maintain my attorney-client privilege with [GSG]."). Durall and Fletcher have nearly identical interests in their respective lawsuits against the Insurers. Their counsel coordinated on the release of the GSG Memo. It was a strategic act drawn from Fletcher's counsel's desire to, as he wrote, "secure admissible testimony based on" the GSG Memo. *See* Exhibit A.

But fairness and precedent dictate that this intentional, strategic, and selective waiver of the attorney work product privilege necessitates waiver of that privilege as to all documents on the same subject matter (*i.e.*, discussions with the Government about its case). *See MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 614 (S.D. Fla. 2013) ("In Florida, a party who bases a claim on matters which would be privileged, the proof of which will necessitate the introduction of privileged matter into evidence, and then attempts to raise the privilege so as to

10

thwart discovery, may be deemed to have waived that privilege." (internal citations and quotations omitted)). According to the Eleventh Circuit, "[d]isclosure of work-product materials to an adversary waives the work-product privilege." *Doe No. 1 v. United States*, 749 F.3d 999, 1008 (11th Cir. 2014).

> Where . . . a lawyer or the lawyer's agents take actions that display an obvious disregard for these policies, it is appropriate to find that a waiver has occurred. As the Supreme Court has noted, "The notion is that failure to take adequate precautions to prevent an adversary from obtaining work product information warrants waiver because '[i]ndifference to such a consequence indicates that protection of the immunity was not important to the person claiming the protection.'"

*Stern v. O'Quinn*, 253 F.R.D. 663, 682 (S.D. Fla. 2008) (citation omitted); *see also Pahl v. Robinson*, No. 4:08-CV-112 CDL, 2009 WL 1097962, at *2 (M.D. Ga. Apr. 22, 2009) (finding that a party and his counsel had waived their work product privilege because their actions were "inconsistent with maintaining secrecy" of the work product). At-issue waiver of the work product privilege can be found when:

> (1) assertion of the protection results from some affirmative act by the party invoking the protection; (2) through this affirmative act, the asserting party puts the protected information at issue by making it relevant to the case; and (3) application of the protection would deny the opposing party access to information vital to its defense.

*Maplewood Partners, L.P. v. Indian Harbor Ins. Co.*, No. 08-23343-CIV, 2011 WL 3918597, at *8 (S.D. Fla. Sept. 6, 2011), *adhered to on denial of reconsideration*, 295 F.R.D. 550 (S.D. Fla. 2013) (finding that Plaintiff put at issue 708 documents identified in its privilege log and requiring their disclosure); *see also Belmont Holdings Corp. v. Suntrust Banks, Inc.*, No. 1:09-CV-1185-WSD, 2012 WL 6430598, at *4 (N.D. Ga. Nov. 19, 2012) ("A party waives the protections provided by the work-product doctrine . . . with regard to a protected subject matter where it selectively and intentionally introduces information and testimony into a litigation and 'fairness

11

requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary.'").

Here, the production of the GSG Memo was an affirmative act, as it was not even sought by BCBSGA's original subpoena. *See* Exhibit B (limiting requests to non-privileged documents). The evidence reflects that Fletcher's counsel told Durall's counsel that Fletcher wanted to use the GSG Memo to pursue their claims in the Georgia Litigation. *See* Exhibit A. Durall has a similar lawsuit, so there is an alignment of interests between Durall and Fletcher. Finally, without a finding of waiver of the attorney work product privilege, Fletcher would be able to rely on Durall's selective waiver while withholding all other documents containing information about what the Government told Durall's counsel about the nature of its case against Fletcher, Durall, and others. This would be exceptionally unjust and inconsistent with the purpose of the attorney work product privilege. Finally, the information sought is vital to BCBSGA's defense. Specifically, Fletcher and Durall claim that the Government was relying on a misunderstanding of a particular fact when they pursued their investigation and prosecution of Fletcher and Durall. Their counsel's contemporaneous notes and correspondence on precisely what the Government told them are highly probative to whether the Government's theory of prosecution was different than what Fletcher and Durall now claim and that Fletcher and Durall knew that.

GSG's production of the GSG Memo led to BCBSGA's issuance of a second subpoena on March 25, 2025, requesting, among other things:

> All Documents related to the Criminal Matter or any investigation in advance of or related to the Criminal Matter. This request includes without limitation (a) notes and memoranda purporting to summarize communications with any Government Agency or Government Official related to the Criminal Matter or any related investigation, and (b) any presentation made to or received from any Government Agency or Government Official related to the Criminal Matter or any related investigation.

*See* Exhibit J, Request No. 11.

GSG's privilege log is extremely deficient: GSG is withholding an unknown number of documents described only as "Case Documents" without any basis for the assertion of privilege, and provides no explanation of any assertion of privilege, for example. *See* Exhibit G. BCBSGA requested that GSG supplement its privilege log, but GSG refused. *See* Exhibit L. The failure to adequately log the withheld documents alone should constitute waiver. *Williams v. Taser Int'l, Inc.*, 274 F.R.D. 694, 696 (N.D. Ga. 2008) ("The failure to comply with [the requirements of Rule 26(b)(5)(A) will result in the waiver of any claim of privilege or other protection."); *see also* Rule 26(b)(5)(A) (stating that a party must "expressly make the claim" of privilege and "describe the nature of the documents, communications, or tangible things not produced or disclosed" in a manner that "will enable other parties to assess the claim.")

In spite of its deficient privilege log, GSG continues to withhold dozens of documents, purportedly based on attorney work product, that are almost certain to reflect information that the Government told GSG, just like the GSG Memo. The documents that GSG listed on its privilege log consist of dozens of documents with subject lines that suggest they may describe communications with the Government, including for example, "Durall – government call.msg"; "For Jim Hayes meeting tomorrow"; "RE: 3 ways govt looking at case;" and "RE: Aaron Durall – Memo re Meeting with Government"; and "Re: Government Case." *See* Exhibit G. Mr. Gelber testified that GSG engaged in at least one other meeting and several phone calls with the Government concerning the basis for a potential prosecution. *See* Exhibit E at 45:4–22; 63:13–19; 64:19–65:1; 71:25–72:6. It remains unclear what additional documents GSG is withholding relating to these calls and meetings.

Durall's other criminal counsel recorded at least one similar summary of a meeting with the Government that Durall has thus far refused to produce. Specifically, Polsinelli PC produced a privilege log identifying a "[s]ummary of notes from May 29, 2019 call with Tysen Duva," written by Brian Rafferty. *See* Exhibit F. The only basis asserted for withholding the notes is attorney work product. *See id*. Although the production of that document is not presently before the Court, a party (or an interested non-party) cannot selectively waive privilege as to documents relating to the same subject matter simply because they believe one is helpful to them. Thus, the Court's ruling on any waiver of attorney work product privilege in connection with the disclosure of the GSG Memo may have broader implications for discovery in the Georgia Litigation.

Because Durall clearly and intentionally waived the attorney work product privilege with respect to the GSG Memo, because he did so through an affirmative act in order to strategically benefit himself and Fletcher, and because the information sought is vital to BCBSGA's defense, BCBSGA respectfully requests that the Court issue an Order finding that Durall waived attorney work product privilege with respect to all documents reflecting or relating to communications between Durall's counsel and the Government. There is simply no reason Durall should be allowed to continue to withhold documents relating to the same topics as the GSG Memo, which he voluntarily produced.

## II.     The voluntary production of the GSG Memo also waived attorney-client privilege.

Durall's voluntary production of the GSG Memo to strategically benefit himself and Fletcher in their respective lawsuits against the Insurers also waived the attorney-client privilege with respect to all documents reflecting or relating to communications between Durall's counsel and the Government. Just as with attorney work product, Durall cannot selectively waive attorney-client privilege over documents he believes are helpful to him and then hide behind the same privilege as a basis to refuse to turn over other documents on precisely the same subject matter.

14

The attorney-client privilege protects "confidential communications between client and lawyer made for the purpose of securing legal advice." *In re Slaughter*, 694 F.2d 1258, 1260 (11th Cir. 1982). "Yet the privilege is not all-inclusive and is, as a matter of law, construed narrowly so as not to exceed the means necessary to support the policy which it promotes." *In re Grand Jury Matter No. 91-01386*, 969 F.2d 995, 997 (11th Cir. 1992) (citing *Fisher v. United States*, 425 U.S. 391, 403 (1976)).

The client, who is the holder of the privilege, may waive the privilege voluntarily. *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 584 (S.D. Fla. 2013) (citing *XL Specialty Ins. Co. v. Aircraft Holdings, LLC*, 929 So. 2d 578, 585–86 (Fla. 1st DCA 2006). In the event of such waiver, otherwise protected communications are no longer protected by the privilege. *Id.* "A party seeking to pierce the privilege need only establish a *prima facie* case that the client's privilege was waived." *Id.* "If a waiver has been sufficiently alleged, the party seeking the benefit of the privilege must establish—by a preponderance of the evidence—that the privilege was not waived, as the burden always rests in the final analysis with the party seeking the protection of the privilege." *Id*.

If a party waives privilege, it may not do so in a selective manner. "The subject-matter waiver doctrine provides that a party who injects into the case an issue that in fairness requires an examination of communications otherwise protected by the attorney-client privilege loses that privilege." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir.), *op. modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994); *see also MCZ/Centrum Flamingo II, LLC v. City of Miami Beach*, No. 08-22419, 2009 WL 10701007, at *5 (S.D. Fla. Aug. 6, 2009) ("[P]rivileges may also be waived when invoked in some fundamentally unfair way. Typically, this occurs where a litigant makes selective use of privileged materials, for example, by releasing only those portions of the

material that are favorable to his position, while withholding unfavorable portions. . . . Depending upon the extent and context of the partial disclosure, the waiver may be broad, covering all communications relating to the subject matter of the disclosure, or narrow, covering only the remaining portions of the partially disclosed communications." (quoting *Tribune Co. v. Purcigliotti*, No. 93 CIV. 7222, 1997 WL 10924, at *5 (S.D.N.Y. 1997))); *Delta Air Lines, Inc. v. Marriott Int'l, Inc.*, No. 1:20-CV-01125-ELR, 2023 WL 7319516, at *6 (N.D. Ga. June 22, 2023) ("[A] defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes. . . . Thus, a party waives the attorney-client privilege when that party places privileged information in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party.").[3] To determine whether there has been a subject-matter waiver of the privilege, "courts weigh the circumstances of the disclosure, the nature of the advice and whether permitting or prohibiting further disclosures would prejudice the parties." *QBE Ins. Corp. v. Jorda Enters., Inc.*, 286 F.R.D. 661, 666 (S.D. Fla. 2012) (citation omitted).

As set forth above, the production of the GSG Memo was voluntary and clearly undertaken because Durall and Fletcher believe it benefits their claims against the Insurers. The GSG Memo was not even responsive to BCBSGA's February 11, 2025, subpoena (the only subpoena issued to GSG when it produced the GSG Memo). *See* Exhibit B; *see also* Exhibit E at 74:12–15 ("Well,

---

[3] In one on-point case, the Court held that a plaintiff waived attorney-client privilege regarding a letter drafted by plaintiff's counsel because, "by sharing the [letter] with Defendant . . . . , Plaintiff has waived the attorney-client privilege for communications from and to counsel regarding the same subject matter . . . . [F]airness dictates that a litigant cannot pick and choose those portions of the attorney-client communications that will be disclosed, thereby disguising, garbling, or manipulating the truth." *Guarantee Ins. Co. v. Heffernan Ins. Brokers, Inc.*, 300 F.R.D. 590, 597–98 (S.D. Fla. 2014) (internal quotations and citations omitted).

16

you had asked for nonprivileged documents and attorney work product is arguably something you don't need to produce in response to that."). It was produced after a conversation between GSG and Fletcher's counsel about the upcoming deposition of Gelber.[4] Exhibit A, Exhibit E at 41–43. The GSG Memo is a memorandum from counsel (GSG) to their client (Durall) regarding their communications with the government about the basis for criminal charges against which they were hired to defend Durall. *See* Exhibit C. It states that it " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *Id*. It was labeled as "Privileged and Confidential," and "protected by the attorney-client privilege." *See id*. In the deposition, Gelber confirmed under oath that GSG used memoranda such as the GSG Memo to "talk to the client later about the case" and because "the client will want to know what happened and so we want to give them an accurate recital." Exhibit E at 13–14. Gelber believed the GSG Memo was sent to Durall. *Id*. at 17:3–13. Yet, Gelber contended in his deposition that the GSG Memo was not protected by the attorney-client privilege. *See id.* at 84–86. For his part, Durall claimed not to have waived the attorney-client privilege. *Id.* at 128:11–17. He is a Florida-licensed attorney.

There is no question that Durall injected the GSG Memo into this case proactively and to benefit himself and Fletcher strategically. Yet, Durall is withholding numerous communications with his counsel (across multiple firms) detailing their conversations with the Government about the basis for its case. This is precisely the type of selective disclosure that is inconsistent with the principles of the attorney-client privilege. Collectively, Durall and Fletcher are seeking *more than one billion dollars in damages*. They should not be permitted to selectively waive the privilege as

---

[4] Counsel for Fletcher and Durall had coordinated on these issues for months before BCBSGA issued its first subpoena. Indeed, Rafferty—who is now representing both Fletcher and Durall in their lawsuits against the Insurers—raised the need for counsel for both Fletcher and Durall to discuss "privilege issues" that would be raised by a deposition of GSG approximately four months before Gelber's deposition. *See* Exhibit A.

to certain documents because they perceive them as helpful to their case, while withholding dozens or hundreds of other documents that reflect numerous other conversations with the Government that may be damning for them. Thus, BCBSGA respectfully requests an Order finding that Durall waived attorney-client privilege with respect to all documents reflecting or relating to communications between Durall's counsel and the Government about the Government's theory of its case.

## CONCLUSION

For the foregoing reasons, BCBSGA respectfully requests that the Court grant its Motion to Compel documents subpoenaed from GSG in its entirety.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(2) of the Local Rules of the Southern District of Florida, the undersigned hereby certify that Petitioner through Robins Kaplan, its counsel in the underlying Northern District of Georgia case, and Respondent, as the party and non-party who may be affected by the relief sought in this motion, have conferred regarding Respondent's production in response to the Subpoenas as well as the accompanying privilege log in a good faith attempt to resolve the issues presented in this Motion, but the parties were unable to reach an agreement and this Motion is opposed.

Dated: October 3, 2025.

                            Respectfully submitted,

                            **NELSON MULLINS RILEY & SCARBOROUGH LLP**

                            */s/ Kimberly J. Freedman*
                            Kimberly J. Freedman
                            Florida Bar No. 71826

Michael T. Woods
Florida Bar No. 125889
NELSON MULLINS RILEY &
SCARBOROUGH LLP
2 South Biscayne Blvd.
21st Floor
Miami, Florida 33131
Telephone: 305.373.9488
Facsimile: 305.373.9443
kimberly.freedman@nelsonmullins.com
yusimy.bordes@nelsonmullins.com
michael.woods@nelsonmullins.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 3, 2025, a true and correct copy of the foregoing was filed with the Court's electronic filing CM/ECF system, which will send a notice of electronic filing to the following counsel of record:

Gerald E. Greenberg
One Southeast Third Avenue
Suite 2600
Miami, Florida 331-1715
Telephone: (305)728-0953
Fax: (305) 728-0951
ggreenberg@gsgpa.com

*Counsel for Respondent Gelber Schachter & Greenberg, P.A.*

*/s/Kimberly J. Freedman*
Kimberly J. Freedman
