**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

BLUE CROSS BLUE SHIELD
HEALTHCARE PLAN OF GEORGIA, INC.

    Petitioner,

    v.

GELBER SCHACHTER & GREENBERG, P.A.

    Respondent.

_____/

**Case No.
1:25-MI-00083-JPB-RGV**

**REPLY IN SUPPORT OF PETITIONER'S MOTION TO COMPEL
GELBER SCHACHTER & GREENBERG, P.A. TO PRODUCE
DOCUMENTS PURSUANT TO SUBPOENAS**

Blue Cross Blue Shield Healthcare Plan of Georgia, Inc. ("BCBSGA") submits this Reply Brief in response to Respondent Gelber Schachter & Greenberg, P.A.'s ("GSG") Response in Opposition to BCBSGA's Motion to Compel.

**INTRODUCTION**

The position taken by GSG in its Opposition to BCBSGA's Motion to Compel is a complete change from the position GSG had consistently taken in the deposition of one of its partners and during months of conferrals with BCBSGA. Prior to the

Opposition, GSG maintained that the GSG Memo[1] *was factual attorney work product*. GSG obtained the consent of its client, Aaron Durall, before producing the GSG Memo because it was attorney work product. Mr. Durall—who is a licensed attorney—stated on the record during a deposition of a GSG partner that "[t]he document that was produced, it was work product privilege[.]" GSG did not produce the GSG Memo originally because BCBSGA's first subpoena sought only non-privileged documents. Simply put, until the filing of GSG's Opposition there was no question that GSG and Mr. Durall agreed that the GSG Memo was *at least factual attorney work product*. Because Mr. Durall's counsel are withholding similar documents that are likely to reflect the Government's statements about the basis for criminal charges against Mr. Durall, BCBSGA considered this a selective waiver. GSG refused to produce its other similar documents, necessitating this motion.

Now, for the first time, GSG takes the position that no waiver occurred because the GSG Memo was *never* covered by the attorney work product doctrine. There is simply no way to square this position with the position GSG has long taken—including testimony under oath from its partner, Dan Gelber—or with the

---

[1] The GSG Memo was defined in BCBSGA's Motion to Compel and is a "memorandum" created by lawyers at GSG to their client, Aaron Durall, providing GSG's self-described "thoughts and impressions" about a meeting with the Government that happened on November 23, 2019, regarding the basis for the Government's potential filing of criminal charges against Mr. Durall. The was previously provided to the Court as Exhibit C to the Motion to Compel.

2

governing law. In any event, even if GSG is correct, then GSG must produce similar memoranda, notes, or other documents reflecting communications with the Government because they, too, would be non-privileged.

The production of the GSG Memo was undertaken voluntarily and to gain a tactical advantage against BCBSGA and others in litigation. GSG has long admitted the GSG Memo was *at least* factual attorney work product. It also clearly reflects the mental impressions of counsel and was a substantive, confidential communication provided by GSG to its client, Mr. Durall, to inform their legal advice to him. This was selective waiver of both attorney work product and the attorney-client privilege. Fairness dictates that BCBSGA be entitled to any similar documents in GSG's custody, possession, or control reflecting the statements of the Government or the communications made by GSG in response.

## **ARGUMENT**

### I. Until filing its opposition brief, GSG maintained that the GSG Memo was factual attorney work product that Mr. Durall agreed to waive.

In its Opposition, GSG argues for the first time that it did not waive the work product doctrine or attorney-client privilege by its production of the GSG Memo because the GSG Memo is not a privileged document. GSG Mem. in Opp. 6–7 (ECF No. 15.) This is a diametrically different position from what GSG advanced during the deposition of GSG's partner, Mr. Gelber, and during months of conferrals.

The first subpoena issued by BCBSGA to GSG requested only non-privileged documents. For this reason, Mr. Gelber testified that the GSG Memo was work product and therefore not responsive to the subpoena:

> And it just seemed like it was useful and we hadn't produced it because it is attorney work product. It certainly says that and it is, *clearly it's work product*. And it did have some of these little asides in it that, although they really – when I looked at them they weren't particularly material in the sense they were minor little assessments by the author. But that I believe that it would be helpful to everybody if we simply gave you the memo and we just took out these impressions and just gave you what I think is a pretty accurate recitation made contemporaneously with the with the conference.

Gelber Dep. 73:2–74:2 (emphasis added), previously provided as Exhibit E to the Motion to Compel. He continued to say that BCBSGA's first subpoena requested "non-privileged documents" and "attorney work product is arguably something you don't need to produce in response to that." *Id.* at 74:6–75:1. Mr. Gelber later definitively testified that "Yeah. [The GSG Memo] was not produced originally because it was attorney work product." *Id.* at 86:9–16.

GSG decided to produce the GSG Memo after either speaking with Plaintiffs' counsel in the Georgia Litigation[2] or after an internal discussion at GSG—Mr. Gelber could not remember which. *Id.* at 75:3–15. Emails reflect that the GSG Memo

---

[2] The "Georgia Litigation" was defined in BCBSGA's Motion to Compel and refers to the case for which the subpoena responses currently before the Court were issued from. Georgia Litigation refers to *LifeBrite Labs., LLC et al. v. Blue Cross & Blue Shield of Fla., Inc., et al.*, Civil Action No. 1:23-cv-03748.

4

was the reason that Mr. Gelber was deposed: Christian Fletcher (and likely Mr. Durall) wanted the GSG Memo or testimony about its contents to use in their lawsuits against BCBSGA and other health insurers. *See* Exhibit A to the Motion to Compel (Mr. Fletcher's counsel writes: "The deposition would be short and just secure admissible testimony based on" the GSG Memo).

Mr. Gelber repeatedly testified in his deposition that GSG obtained Mr. Durall's consent to produce the GSG Memo *because it was attorney work product*:

> Q: Okay. What was the consent that was provided by Mr. Durall to produce the document?
>
> [Objection.]
>
> [Mr. Gelber]: Okay. This is attorney work product and we decided to produce it. And before producing it we would want the client to know that and so we asked the client, told him that we thought this would be the easiest way to go about this and he said fine.
>
> …
>
> Q: Did you talk to Mr. Durall about the fact that [the GSG Memo] was also attorney-client privileged?
>
> A: I told – [Objection] – I told him it was work product. My view is as produced to you, it's work product.

Gelber Dep. 82:25-84:12.

Mr. Durall even appeared on the record during Mr. Gelber's deposition and confirmed that the GSG Memo was attorney work product, stating "[t]he document that was produced, it was work product privilege[.]" Gelber Dep. 128:7-17.

5

GSG never argued that the document ceased to be work product when they made the redactions, nor did GSG argue that the GSG Memo was responsive to the first BCBSGA subpoena. Instead, Mr. Gelber's testimony is clear that GSG produced the GSG Memo to assist Mr. Gelber with his testimony and the GSG Memo is still factual work product. Only now, and for the first time, does GSG assert that the GSG Memo was not protected by the work product doctrine. However, the GSG Memo would appear to meet the definition of work product as it was "prepared in anticipation of litigation or for trial by or for another party or its representative" and work product is typically "reflected in . . . memoranda . . . ." *SavaSeniorCare, LLC v. Starr Indem. & Liab. Co.*, No. 1:18-CV-1991-SDG, 2019 WL 9806574, at *8 (N.D. Ga. Oct. 31, 2019), *report and recommendation adopted*, No. 1:18-CV-01991-SDG, 2019 WL 9809629 (N.D. Ga. Dec. 23, 2019).

GSG's argument in its Opposition is wholly unsupported by the record. Mr. Durall clearly and intentionally waived attorney work product with respect to the GSG Memo because he produced the GSG Memo in an affirmative act to strategically benefit himself and Mr. Fletcher in their respective lawsuits. This selective waiver necessitates the broader production of documents in the possession of Mr. Durall or his counsel reflecting their communications with the Government. Thus, BCBSGA respectfully requests that the Court issue an Order finding that Mr. Durall waived attorney work product protection with respect to all documents

reflecting or relating to communications between Mr. Durall's counsel and the Government. There is simply no reason Mr. Durall should be allowed to continue to withhold documents relating to the same topics as the GSG Memo, which he voluntarily produced.

## II.     The production of the GSG Memo waived the attorney-client privilege.

GSG argues that the GSG Memo was not protected by the attorney-client privilege and therefore such privilege could not have been waived by disclosure of the GSG Memo. GSG Mem. in Opp. 8–10 (ECF No. 15.) Mr. Gelber's own testimony about the creation and use of the GSG Memo demonstrates that it was an attorney-client privileged communication.

The attorney-client privilege protects "confidential communications between client and lawyer made for the purpose of securing legal advice." *In re Slaughter*, 694 F.2d 1258, 1260 (11th Cir. 1982). The attorney-client privilege attaches to documents where "(1) an attorney-client relationship existed, (2) that a confidential communication was made to or from (3) an attorney who had been retained for the purpose of securing legal advice or assistance. *Meade v. Gen. Motors, LLC*, 250 F. Supp. 3d 1387, 1391 (N.D. Ga. 2017). "What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer." *Id.* (quoting *United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F.Supp.3d 1319, 1328 (N.D. Ga. 2015)).

The elements of the attorney-client privilege are present here. Mr. Durall was GSG's client, so an attorney-client relationship existed. Gelber Dep. 10:18–11:21. The GSG Memo was a confidential communication made from attorneys (GSG) to their client and co- counsel (Mr. Durall and his other counsel, Brian Rafferty) for the purpose of securing legal advice. While he could not recall specifics about the GSG Memo, Mr. Gelber testified that typically memos like the GSG Memo are circulated to the people listed on the "To:" line. Gelber Dep. at 17:3–13. GSG and Mr. Durall clearly consider the GSG Memo confidential, as it was labeled as "Privileged and Confidential," "Attorney Work Product," and GSG asserted in the GSG Memo that it was "protected by the attorney-client privilege." *See* Exhibit C to the Motion to Compel. GSG also designated the GSG Memo as confidential when producing it in the Georgia Litigation. *See id.* GSG only produced the GSG Memo after it obtained Mr. Durall's consent prior to producing, which further evidences the confidential nature of the communication. *Id.* at 85:14–86:9.

The GSG Memo was also sent in furtherance of GSG's efforts to provide substantive legal advice to Mr. Durall. In his deposition, Mr. Gelber explained that memos like the GSG Memo are "significant building block[s]" to how GSG practices. Gelber Dep. 14:14–15:4. Mr. Gelber said that GSG used documents like the GSG Memo to "talk to the client later about the case" and because "the client will want to know what happened and so we want to give them an accurate recital."

Gelber Dep. 13:16–15:4. GSG makes memos, like the GSG Memo, because "the government's theory of prosecution is incredibly important. It's the most important thing, so [GSG] want[s] to know what the government is saying and it helps [GSG] prepare a defense[.]" *Id.* at 14:14–15:6. GSG also prepares memos like this because the government may change its theory and it wants to be able to tell the government that it has changed its theory. *Id.*

It is true that the attorney-client privilege attaches to communications, and not facts themselves. "While facts themselves are not privileged, a confidential attorney-client communication that includes or discusses facts may be privileged if it otherwise meets the necessary elements." *United States v. Davita, Inc.*, 301 F.R.D. 676, 683 (N.D. Ga. 2014), *on reconsideration in part*, No. 1:07-CV-2509-CAP-JSA, 2014 WL 11531065 (N.D. Ga. May 21, 2014); *see also SavaSeniorCare,* 2019 WL 9806574, at *11 (N.D. Ga. Dec. 23, 2019) (finding that a corporate representative's notes memorializing conversations with counsel were protected by the attorney-client privilege); *Solomon v. Sci. Am., Inc.*, 125 F.R.D. 34, 37 (S.D.N.Y. 1988) (noting "[i]t is the communication which is privileged, not the underlying facts of the transaction," in upholding the attorney-client privilege concerning a memo sent from a client to his attorney reflecting the client's memory of the pertinent facts of the case). While the conversation between GSG and the Government was not a privileged communication, the communication sent from GSG to its client and other

9

attorneys was. As stated in BCBSGA's Motion to Compel, Mr. Durall has tried to strategically pick and choose when he will claim the attorney-client privilege. For the reasons stated in the Motion to Compel, the attorney-client privilege has been waived as to other documents summarizing, reflecting, or relating to communications between Mr. Durall's counsel and the Government.

### III. If the GSG Memo is not privileged, then GSG must produce other documents reflecting communications with the government.

For the reasons stated above and in the Motion to Compel, GSG and Mr. Durall waived attorney work product and attorney-client privilege with respect to documents reflecting communications between Mr. Durall's counsel and the Government. However, even if this Court disagrees and finds that the GSG Memo was not a privileged document then GSG should be ordered to produce all documents memorializing or reflecting statements made by the Government or statements made by Mr. Durall's counsel to the Government. BCBSGA suspects that such documents exist and are being withheld by GSG. For example, the GSG privilege log includes documents named "Durall – government call.msg"; "For Jim Hayes meeting tomorrow" ; "RE: 3 ways govt looking at case;" and "RE: Aaron Durall – Memo re Meeting with Government"; and "Re: Government Case." GSG Privilege Log, previously provided as Exhibit K to the Motion to Compel. At a minimum, any such document should be produced in redacted form, disclosing the substance of communications between Mr. Durall's counsel and the Government.

## IV. GSG's request for attorney's fees and costs is baseless.

GSG contends that BCBSGA "has unreasonably argued that Mr. Durall and GSG waived attorney work product and attorney-client privilege when the facts clearly demonstrate the opposite," and request attorney's fees and costs incurred in connection with their Opposition brief. This request smacks of bad faith. As detailed above, GSG through its partner, Mr. Gelber, testified under oath that the GSG Memo *was attorney work product. See* Gelber Dep. 73:2-74:2 ("And it just seemed like it was useful and we hadn't produced it because it is attorney work product. It certainly says that and it is, *clearly it's work product.*") (emphasis added); Gelber Dep. 86:9-16 ("Yeah. [The GSG Memo] was not produced originally because it was attorney work product."). Mr. Durall stated on the record that the GSG memo "was work product privilege[.]" Gelber Dep. 125:9-17. Mr. Gelber even testified that GSG had Mr. Durall consent to the production of the GSG memo because it was work product. *See* Gelber Dep. 82:25-83:8. GSG took the same position in its countless conferrals with BCBSGA. GSG changed its argument for the first time in its Opposition in a way that is *completely inconsistent with its past position and sworn testimony of Mr. Gelber*. If any party should be entitled to attorney's fees and costs it is BCBSGA.

BCBSGA took seriously its obligation under Rule 45 to take "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Its original subpoena sought only *non-privileged* documents

11

in specific topics. But GSG and Mr. Durall elected to voluntarily produce one privileged document (the GSG Memo), necessitating a second subpoena from BCBSGA seeking similar documents. GSG and Mr. Durall then refused to produce similar documents, crystallizing the selective waiver issue now before this Court. Put simply, the decision by Mr. Durall and GSG to selectively waive applicable privileges may have increased the burden on GSG, but BCBSGA did not impose an undue burden on GSG. Moreover, GSG may even have been paid for its time by Mr. Durall. When asked if GSG was being paid for Mr. Gelber's time at the deposition, Mr. Gelber did not know. *See* Gelber Dep. 37:6-9. Regardless, GSG's participation as a third party in the Georgia Litigation is the result of the litigation strategy jointly effectuated by counsel for Mr. Fletcher and Mr. Durall. *See* Exhibit C to Motion to Compel.

Because BCBSGA took "reasonable steps to avoid imposing undue burden or expense" on GSG in connection with the subpoenas, GSG's request for attorney's fees and costs should be denied. *See* Fed. R. Civ. P. 45(d)(1); *see also Gugliuzza v. Swift Transportation Co. of Arizona, LLC*, No. CV421-140, 2022 WL 22893765, at *1 (S.D. Ga. Apr. 4, 2022) (quoting *Liscar v. Pediatric Acute Care of Columbus, P.C.*, 2012 WL 4862783, at *1 (M.D. Ga. Oct. 12, 2012)) ("Rule 37, however, does not apply to motions to compel compliance with a subpoena duces tecum issued pursuant to Rule 45."); *Pravin Patel, Priti Patel, Riti Patel, & Kruti Patel, Plaintiffs,*

*v. Chandrakant Bhakta, Jyotsna Bhakta, & Mayur Bhakta, Defendants, Kumar, Prabhu, Patel & Banerjee, LLC, Respondent.*, No. 1:15-CV-562-MHC-ECS, 2015 WL 12159208, at *4 (N.D. Ga. Apr. 29, 2015) ("In addition, Rule 45 does not provide for an award of attorneys' fees and expenses for bringing a motion to compel production of documents under subpoenas. . . . Rule 37(a)(5)(A) does provide for an award of the movant's reasonable expenses incurred in making the motion to compel, including attorney's fees, but, unlike Rule 37, Rule 45 contains no express provision for attorneys' fees or sanctions to a party that has prevailed on a motion to compel compliance with a subpoena duces tecum.") (internal quotation marks and citations omitted). This is particularly appropriate here, where GSG's Opposition relies entirely on a legal position that is flatly inconsistent with its earlier position, including the sworn testimony of its partner.

## **CONCLUSION**

BCBSGA respectfully requests the Court enter an order compelling GSG to comply with the subpoenas issued to it by BCBSGA, including finding that Mr. Durall has waived attorney work product and attorney-client privilege with respect to any documents reflecting or relating to his counsel's communications with the Government.

Dated: November 12, 2025.                Respectfully submitted,

By: */s/ Harold D. Melton*

Harold David Melton
GA Bar No. 501570
Alyssa P. Cavanaugh
GA Bar No. 252348
TROUTMAN PEPPER LOCKE LLP
600 Peachtree Street, NE, Suite 3000
Atlanta, GA 30308
Tel: 404-885-3062
Fax: 404-885-3900
Email: harold.melton@troutman.com
Email: alyssa.cavanaugh@troutman.com

Nathaniel J. Moore, Esq. (*Pro Hac Vice*)
ROBINS KAPLAN LLP
800 LaSalle Ave., Suite 2800
Minneapolis, MN 55402
Tel: 612-349-8562
Fax: 612-339-4181
Email: nmoore@robinskaplan.com

*Counsel for Blue Cross Blue Shield Healthcare Plan of Georgia, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D) of the Local Rules for the United States District Court for the Northern District of Georgia, I hereby certify that the foregoing has been prepared in Times New Roman, 14-point font, as permitted by Local Rule 5.1.

This 12th day of November, 2025.

>*/s/ Harold D. Melton*
>Harold D. Melton
>GA Bar No. 501570
>*Counsel for Blue Cross Blue Shield*
>*Healthcare Plan of Georgia, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of November, 2025, I electronically filed the foregoing **REPLY IN SUPPORT OF PETITIONER'S MOTION TO COMPEL GELBER SCHACHTER & GREENBERG, P.A. TO PRODUCE DOCUMENTS PURSUANT TO SUBPOENAS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties in the action.

>*/s/ Harold D. Melton*
>Harold D. Melton
>GA Bar No. 501570
>*Counsel for Blue Cross Blue Shield*
>*Healthcare Plan of Georgia, Inc.*